E-FILED
Wednesday, 21 October, 2026 11:03:18 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CRISTOBAL SANTANA, Plaintiff, | ) | |
| v. | ) | 3:26-cv-03362-MMM |
| SANGAMON COUNTY SHERIFF OFFICE, et al., Defendants. | ) | |

**ORDER**

Plaintiff, proceeding pro se under 42 U.S.C. § 1983, presently incarcerated at Lawrence Correctional Center, pursues claims for violations of his constitutional rights under the First Amendment during his detention at the Sangamon County Jail.

I. MOTION TO REQUEST COUNSEL

The case is before the Court for ruling on Plaintiff's Motion to Request Counsel, Dkt. 5. The Seventh Circuit has stated the standard for Plaintiff's request as follows:

> Under 28 U.S.C. § 1915(e)(1), a federal court "may request an attorney to represent any person unable to afford counsel." The statute is "entirely permissive." *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). Civil litigants have no constitutional or statutory right to court-appointed counsel, and § 1915(e)(1) "does not authorize the federal courts to make coercive appointments of counsel." *Id.* at 653 (quoting *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 310, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989)). Rather, the statute "codifies the court's discretionary authority to recruit a lawyer to represent an indigent civil litigant *pro bono publico*." *Id.*
>
> "Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). "District

courts are thus placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most." *Id.*

Accordingly, we have recently explained that "the decision whether to recruit a lawyer for a particular plaintiff is made against the twofold backdrop of a high volume of indigent, pro se litigants (particularly incarcerated individuals) and a small pool, by comparison, of attorneys willing and able to take those cases on pro bono." *Watts v. Kidman*, 42 F.4th 755, 763 (7th Cir. 2022). Based on these and other practical considerations, we have held that district judges should engage in a two-step inquiry when faced with a request for pro bono counsel under § 1915(e)(1), asking first "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt*, 503 F.3d at 654.

The first step needs no elaboration. Step two "can be complex" and involves a pragmatic judgment about the difficulty of the case and the plaintiff's ability to present it to the court on his own. *Watts*, 42 F.4th at 760. "The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Pruitt*, 503 F.3d at 655. A judge will normally consider "the plaintiff's literacy, communication skills, educational level, and litigation experience" along with any evidence in the record "bearing on the plaintiff's intellectual capacity and psychological history." *Id.* But these are merely factors that are ordinarily relevant. No one factor is "necessary or conclusive." *Id.* at 655 n.9. Indeed, "[t]here are no fixed requirements for determining a plaintiff's competence to litigate his own case." *Id.* at 655. Ultimately, the "inquiry into the plaintiff's capacity to handle his own case is a practical one, made in light of whatever relevant evidence is available on the question." *Id.*

Finally, "the decision whether to recruit pro bono counsel is left to the district court's discretion." *Id.* at 654. Our job is to ensure that this discretion is exercised in accordance with appropriate legal principles. The "question on appellate review is not whether we would have recruited a volunteer lawyer in the circumstances, but whether the district court applied the correct legal standard and reached a reasonable decision based on facts supported by the record." *Id.* at 658.

*Jones v. Anderson*, 116 F.4th 669, 675-76 (7th Cir. 2024).

Here, first, Plaintiff has not shown a reasonable attempt to obtain counsel on his own. It appears he wrote to one law firm, the Roderick and Solange MacArthur Center for Justice in Chicago. Additional documented attempts to find representation (or a demonstrated inability to write to law firms seeking assistance) are necessary to demonstrate a reasonable attempt to find counsel without Court intervention.

As to the second inquiry, Plaintiff's claims are not factually difficult. He has personal knowledge of his claims and can testify to what he experienced. Further, written discovery would produce to Plaintiff the relevant jail records related to his claims. Plaintiff's claims are also not particularly legally difficult, though all federal litigation is difficult to a degree. Plaintiff's pleadings are clear and legible. They are coherent. Plaintiff's education level is some college. There is no information before the Court that indicates Plaintiff is mentally impaired to the extent that he cannot represent himself.

Plaintiff is able to represent himself at this early stage of the case.

II. MERIT REVIEW

The Court must "screen" Plaintiff's complaint, and through such process identify and dismiss any legally insufficient claim, or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory

statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

A. Facts

Plaintiff sues the Sangamon County Sheriff's Office along with the Jail Superintendent, several Lieutenants, and Doe Administrative Staff.

Plaintiff alleges first that on August 13, 2024, he received clearly marked privileged legal mail that had been opened outside his presence. He notes that the Sangamon County Jail's legal mail policy indicates that legal mail is to be opened in inmates' presence and may be searched for contraband. The mail had been taped shut again. Plaintiff does not indicate the contents of that item of mail, any deadlines it related to, or any impact the mail being opened had on any legal matter.

Second, he alleges that on July 28, 2025, he received clearly marked legal mail from the Quinn Johnston law firm pertaining to pending action *Santana v. Smith*, CD IL Case No. 24-cv-3246. He indicates the mail was delayed "nearly twenty days." He does not allege any legal prejudice, and the Court notes that the only Defendant represented by Quinn Johnston in 24-cv-3246 was terminated at Plaintiff's request.

Third, he alleges that on August 4, 2025, he received clearly marked legal mail, again pertaining to case no. 24-cv-3246, that had been deliberately opened outside his presence, that the envelope was postmarked July 15, 2025, and that the enclosed documents were filed on July 15, 2025, and that this affected Plaintiff's ability to

communicate with defense counsel. Plaintiff does not indicate the nature of the documents in the envelope, nor does he indicate any legal prejudice that resulted.

Fourth, he asserts that on February 4, 2026, he discovered that clearly marked legal mail from Quinn Johnston had again been opened outside his presence. He alleges that envelope contained initial disclosures for 24-cv-3246 and contained medical records. It reflected dates Plaintiff was admitted to Springfield Memorial Hospital with broken legs after being run over by an Illinois State Police SUV, which incident is the subject matter of Central District of Illinois Case No. 24-cv-3171, a Fourth Amendment excessive force claim. Plaintiff alleges that while he was in the hospital, after being run over by an Illinois State Police SUV, the ISP created fabricated charges for the arrest and offense date of October 27, 2023. He alleges Jail staff scanned documents and provided him with digital copies rather than paper copies. He alleges that this way of providing him the documents rendered him unable to produce evidence in his cases. Plaintiff alleges that during an April 19, 2026, transfer from Sangamon County Jail to Graham Correctional Center, the flash drive was "never returned nor destroyed."

Plaintiff alleges that on April 13, 2026, Plaintiff signed a sheet for deposition transcripts for 24-cv-3171, but was not permitted to mail it on his own, was assured it would be sent out, that Aaron Conrad was responsible for making sure the document was mailed, but that the sheet was absent from the documents attached to the defendant's summary judgment motion. There is no allegation that these occurrences had any impact, much less actual legal prejudice, on Plaintiff's lawsuit.

Plaintiff alleges that these incidents were not isolated, but occurred repeatedly. He alleges these facts support an inference that the conduct was deliberate and was a custom, policy, or practice.

Plaintiff alleges that he lost the confidentiality of his litigation materials, experienced interference with and delay in his ability to litigate the pending actions, emotional distress, and anxiety about who had access to his private information.

B. Analysis

"An inmate's legal mail … is entitled to greater protections because of the potential for interference with his right of access to the courts." *Kaufman v. McCaughtry*, 419 F.3d 678, 685–86 (7th Cir. 2005). "Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence." *Id.*

But interception of a prisoner's confidential communications with his lawyer are subject to a harmless-error analysis. *Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010) (stating that the current system makes it "unlikely that isolated interferences with attorney-client communications in prisoner cases will block the prisoner's access to meaningful justice"). Thus, isolated incidents of opening a prisoner's legal mail outside of his presence generally do not violate the Constitution absent a detrimental effect on the prisoner's "access to justice." *Id.*

"Rule 8 does not require plaintiffs to plead facts or legal theories." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). "However, as applied to prisoners who claim

they have been denied access to the courts, notice pleading requires plaintiffs to 'make specific allegations as to the prejudice suffered because of the defendants' alleged conduct." *Id.*, (quoting *Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003)). "This is because the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access the courts, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). To proceed on an access-to-courts claim, a plaintiff must "allege in his complaint that the alleged deprivations have caused him actual injury …." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009).

Plaintiff's allegations here do not state a claim for relief. He alleges that legal mail relating to two civil actions was opened outside his presence, and certain documents were produced to him digitally rather than in paper form. One action was related to medical care at the Jail. The other was related to whether an Illinois State Police Trooper violated Plaintiff's Fourth Amendment rights. There is no indication that Plaintiff suffered actual legal prejudice from any of this alleged mishandling of his legal mail. A review of the public docket sheets in both cases does not raise any indication that Plaintiff has been prevented, or will be prevented, by these alleged issues, from fully and fairly litigating his civil actions. Plaintiff has not, therefore, alleged actual, specific legal prejudice as required to state a First Amendment claim.

IT IS THEREFORE ORDERED:

1. Plaintiff's Motion for Leave to Proceed in Forma Pauperis [3] is DENIED because Plaintiff's trust ledger indicates that he is well able to pay the filing fee in this case. Full filing fee of $405 due November 10, 2026. If Plaintiff does not timely pay the filing fee this action may be dismissed without additional notice to Plaintiff.
2. Plaintiff's Motion to Request Counsel [5] is DENIED.
3. Plaintiff's allegations do not state a federal claim for relief. Plaintiff is allowed 21 days to file an amended complaint if he believes he can do so in good faith and consistent with this order. If he does not amend, this lawsuit will be dismissed without prejudice.

Entered October 21, 2026.

*s/Michael M. Mihm*

MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE